No. 41,601

ALPHONS H. SCHARTZ, *Appellee,* v. FARM BUREAU MUTUAL INSURANCE, INC., *Appellant.*

(348 P. 2d 636)

Opinion
filed January 23, 1960.

*Jerry M. Ward,* of Great Bend, argued the cause, and *Tudor W. Hampton* and *Herbert Rohleder,* both of Great Bend, were with him on the brief for the appellant.

*T. B. Kelley* and *Glenn Opie,* both of Great Bend, argued the cause, and *Fred L. Connor,* of Great Bend, was with them on the brief for the appellee.

The opinion of the court was delivered by

PRICE, J.: This case arises out of a dispute concerning the maximum liability of defendant insurance company for "bodily injury—each accident" under an automobile insurance policy.

The action is by the insured against the company to recover the amount he was forced to pay in settlement of a claim over and above the maximum amount of liability admitted and contended for by the company.

The appeal is by defendant company from an order overruling its demurrer to the petition.

The nature of the case and the questions presented are such that it will be necessary to summarize the petition in considerable detail. The insured will be referred to throughout as plaintiff and the insurance company as defendant.

Plaintiff is a farmer in Barton county. At all times material one K was the agent of defendant. Plaintiff was the owner of a 1948 IHC truck, and on February 19, 1952, defendant issued to plaintiff its policy No. 9520, insuring against the hazards of personal injury and property damage arising out of the use of such truck. Attached

to the policy was a rider or declaration fixing the limits of liability as follows: "Bodily injury: each person $25,000; each accident $50,000; property damage: each accident $5,000," and other coverage as therein indicated.

On or about the date of the policy, defendant, through its agent K, orally contracted with plaintiff at plaintiff's home to increase the insurance coverage, heretofore mentioned, to provide personal injury and property damage liability to the maximum coverage written by defendant at that time, and at such time and place K stated that he would so increase the limits of liability in the policy. Plaintiff relied upon such oral contract of insurance and the statements of agent K.

On the mentioned date, and prior and subsequent thereto, plaintiff carried insurance policies with defendant, obtained through K, covering the truck in question and several other vehicles. In the course of these insurance transactions he relied upon the oral contracts and representations of K in the issuance of policies, and relied upon K and defendant to send proper billing statements for premiums without a detailed examination of the annual policies and billings by plaintiff. As they fell due plaintiff paid to defendant all annual premiums, and in all such transactions plaintiff relied upon K to attend to such billings and policies.

On June 25, 1955, at approximately three o'clock in the afternoon, the truck in question, while being driven by plaintiff's minor son, as the agent, servant and employee of plaintiff, was involved in an accident near Great Bend. As a result of the collision Mr. and Mrs. Fred E. Bales, occupants of the other vehicle, were killed, and their three minor children riding with them received personal injuries. In addition, the Bales' vehicle was damaged.

On the date of this accident, June 25, 1955, but after it had occurred, agent K called at the home of plaintiff for the purpose of ascertaining the facts concerning the same and brought with him an insurance policy which K stated to plaintiff he thought covered plaintiff's truck, but on examination of the policy by K and plaintiff and a comparison with the damaged truck, it was discovered that the policy brought by K to plaintiff's home covered another truck. Following this discovery K returned to his office and procured the policy covering the truck in question and returned to plaintiff's home with it. Upon examination of this policy it was discovered that it contained the limits of liability heretofore men-

tioned and quoted. Plaintiff expressed his surprise to K that the policy did not contain the higher limits of liability arranged for in 1952, and he told K that he had requested, and defendant had contracted for, the larger coverage. Whereupon K, by his "facial expression and hesitancy and clearing of throat," indicated his surprise that the policy had not been increased as previously arranged for. K then inquired of plaintiff whether he still wanted the larger coverage, and plaintiff told K that he had relied on the agreement for the larger coverage and that he wanted it.

Whereupon, and with full knowledge that the accident had already occurred, K proceeded to and did issue another rider or declaration to the policy in question by the terms of which the limits of liability were made to read: "Bodily injury, liability, each person $100,000; each accident $300,000; property damage liability each accident $50,000." This rider or declaration was made effective from June 25, 1955, at 12:01 A. M. K caused this rider or declaration to be countersigned by other authorized representatives of defendant, and it was delivered to plaintiff by defendant. A copy thereof was attached to the petition as an exhibit, and it shows the limits of liability as last above mentioned; that the effective date thereof was June 25, 1955, at 12:01 A. M., and the "annual policy endorsement" in connection therewith is signed by the secretary and president of defendant.

Demand for damages having been made upon plaintiff and his son by the legal representatives of the deceased Bales and the guardians of the Bales minors because of the deaths and injuries arising out of the collision, plaintiff, on January 21, 1957, made written demand upon defendant to settle the claims for an amount within the limits of the policy—that is, the maximum liability written by defendant—and notified defendant that it would be held responsible for the defense of any suits resulting from the collision and for any judgments resulting therefrom within or in excess of the limits of the policy. In this written demand plaintiff further stated that if he had not been billed for and paid the premium on the policy in which the liability limits were $300,000 for "bodily injury— each accident," he requested statements for such premium and made tender of the amount thereof.

Shortly prior to June 10, 1957, a compromise settlement was effected by the Bales claimants and plaintiff and defendant by which claimant collectively agreed to accept the sum of $67,500

for the deaths and personal injuries, and property damage in the amount of $312.25. Defendant denied liability under the policy for $17,500 of this compromise settlement.

On June 10, 1957, five suits were filed against plaintiff and his son in the district court of Barton county by the Bales claimants seeking recovery in the amount of $67,812.25, and on the same day judgments aggregating that amount were rendered against them, whereupon defendant paid into court, to apply on satisfaction of such judgments, the sum of $50,312.25, and plaintiff paid into court the sum of $17,500. Also on that date, plaintiff and defendant entered into a written "Reservation of Rights Agreement" which, after reciting the details of the compromise settlement with the Bales claimants, provided that the payment by plaintiff of the sum of $17,500 should not in any manner affect his rights to prosecute any claim he might have against defendant for its liability for payment of such amount under the insurance relationship of plaintiff and defendant. A copy of this agreement was attached to the petition.

Fourteen days later, on June 24, 1957, plaintiff brought this action to recover from defendant the sum of $17,500 which he had been forced to pay in satisfaction of the judgments rendered against him, and for such other and further relief as seems just and equitable.

Defendant filed a demurrer to the petition on the grounds that (1) it fails to state facts sufficient to constitute a cause of action in favor of plaintiff and against defendant; (2) it shows on its face that the statute of limitations has run against plaintiff and therefore plaintiff has no cause of action existing against defendant, and (3) it shows on its face that plaintiff is guilty of laches which bars any right of action by plaintiff against defendant.

The demurrer was overruled and defendant has appealed.

In support of its theory of the case defendant states six propositions as follow:

(1) A written contract of insurance which is clear and unambiguous cannot be varied by an alleged parol agreement entered into prior to or contemporaneous with the written instrument.

(2) Plaintiff's petition fails to state a cause of action for relief on the ground of mutual mistake or fraud.

(3) Where a party has in his possession approximately three and one-half years a written policy of insurance, and where he

received three written renewal endorsements during that period all of which clearly and unambiguously set forth the coverage and liability limits, he is estopped to contend after an accident that the policy and endorsements were incorrect and he will be deemed to have ratified and accepted the contract and renewals as written by the insurance company.

(4) Where a petition is not drawn upon a single and definite theory, and where there is such confusion of theories alleged that the court cannot determine from the general scope of the petition on which of several theories a recovery is sought, the petition is insufficient.

(5) Where a petition is drawn on indistinct and indefinite theories, but shows on its face that an action for breach of an oral contract, for reformation of a written contract due to mutual mistake, or fraud and deceit, any one of which is barred by the statute of limitations, the petition fails to state a cause of action and is subject to a demurrer.

(6) When a party to an alleged oral contract entered into in February of 1952, which contract is reduced to writing, and renewals and billings are delivered to the party annually through August, 1954, he is guilty of laches in failing to bring an action on the basis that the written instrument did not reflect the true oral agreement.

Conceding, solely for the sake of argument, that each of defendant's contentions, as an abstract statement of law, is correct, nevertheless, as we view the matter, the difficulty with its position with respect to the facts pleaded is this:

This accident occurred about three o'clock in the afternoon of June 25, 1955. Later in the day, and with full knowledge on the part of agent K that the accident had occurred, K issued a rider or declaration to the policy in question showing the limit of liability to be $300,000 for "bodily injury—each accident." This rider was made effective as of June 25, 1955, at 12:01 A. M.—some fifteen hours *prior* to the accident. The rider, which appears as "Exhibit B" to the petition, was signed by the secretary and president of defendant company, and was delivered to plaintiff by defendant.

In passing on the demurrer to the petition we are not concerned with what the evidence may or may not establish on the trial of

this case with respect to the issuance of the rider increasing the limit of liability, and neither are we concerned with what the evidence may show concerning the scope and extent of K's authority as agent of the defendant. For purposes of the demurrer the facts pleaded in the petition must be taken and considered as true— and, so considered, we have no difficulty in concluding that they are sufficient to state a cause of action. A number of defendant's arguments might very well be appropriate and pertinent upon the trial of this case, depending upon what the evidence may or may not show, but in our opinion are inapplicable to the single question now before us.

The trial court did not err in overruling the demurrer to the petition and the judgment is affirmed.